UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL TRENTLY, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:19-CV-01836 |
| v. | (MEHALCHICK, J.) |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM**

Plaintiffs Michael Trently ("SpDUSM Trently") and Amy Trently ("Mrs. Trently") (collectively, "Plaintiffs") initiated this action on October 23, 2019, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 against Defendants United States of America ("Government") and City of Scranton.[1] (Doc. 1). Before the Court is Plaintiffs' motion for reconsideration (Doc. 77) of the Court's Order (Doc. 76) dated July 9, 2024, by which the Court granted the Government's motion for summary judgment (Doc. 49) and dismissed Plaintiffs' complaint with prejudice (Doc. 1). For the following reasons, Plaintiffs' motion for reconsideration (Doc. 77) is **DENIED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On October 23, 2019, Plaintiffs refiled their suit by filing a complaint in this Court, after exhausting their administrative remedies.[2] (Doc. 1). On December 27, 2019, the City of

---

[1] The City of Scranton was terminated from this action on September 8, 2020. (Doc. 36).

[2] On January 25, 2018, the Plaintiffs filed a complaint in the Court of Common Pleas of Lackawanna County against SpDUSM Hegedus, the City of Scranton, and Weitz. On March 15, 2018, the Government substituted itself for SpDUSM Hegedus as a party, certifying that SpDUSM Hegedus was acting within the scope of his employment for the Task Force, and filed a notice of removal under 18 U.S.C. § 1442(a)(2). The Government filed a motion to dismiss for lack of subject matter jurisdiction on March 29, 2018, and on April 3, 2018, and Scranton filed a motion to dismiss. On November 116, 2018, the Court dismissed

Scranton filed a motion to dismiss for failure to state a claim, and the Government filed a motion to dismiss on February 6, 2018. (Doc. 10; Doc. 18). On September 8, 2020, the Court granted the City of Scranton's motion to dismiss (Doc. 10), terminating the City of Scranton as a Defendant and denied the Government's motion to dismiss (Doc. 18; Doc. 46). On March 10, 2021, the Government filed an answer to Plaintiffs' complaint. (Doc. 39). On October 18, 2021, the Government filed a motion to dismiss for lack of jurisdiction and/or for summary judgment. (Doc. 49). The parties filed their respective briefs and supporting exhibits related to the Government's motion for summary judgment and the Court heard oral argument on the pending motion on April 1, 2024. (Doc. 49; Doc. 52; Doc. 53; Doc. 60; Doc. 61; Doc. 62; Doc. 72). On July 9, 2024, the Court granted the Government's motion for summary judgment and dismissed Plaintiffs' complaint with prejudice. (Doc. 1; Doc. 49; Doc. 75).

Plaintiffs, now representing themselves as *pro se* litigants, filed a motion for reconsideration of the Court' Order dismissing Plaintiffs' complaint on July 18, 2024, and a brief in support on the same day. (Doc. 77; Doc. 78). In their motion for reconsideration, Plaintiffs specifically request the Court reconsider its rulings dismissing Plaintiffs' complaint under the borrowed servant doctrine. (Doc. 78, at 3). On August 27, 2024, the Government filed a brief in opposition to Plaintiffs' motion for reconsideration. (Doc. 80). Accordingly, the matter is ripe for disposition. (Doc. 77; Doc. 78; Doc. 80).

II.    **LEGAL STANDARD**

"A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the

---

Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Doc. 1, ¶¶ 1-4); *See Trently v. Government*, No. 3:18-CV-00602, 2018 WL 6018890, at *1-4 (M.D. Pa. Nov. 16, 2018).

Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002) (citation omitted); *see also Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310, 314 n.3 (M.D. Pa. 1994), *aff'd,* 31 F.3d 1175 (3d Cir. 1994). The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Thus, a judgment may be amended or altered if the party seeking reconsideration shows at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677 (citation omitted). "By reason of the interest in finality, at least at the district court level, motions for reconsideration should be sparingly granted." *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947, at *1 (W.D. Pa. Feb. 1, 2017).

### III.   DISCUSSION

Upon a careful and thorough review of Plaintiffs' arguments, the Court finds no grounds for granting their motion for reconsideration as there is no intervening change in controlling law, no new evidence that was unavailable when the Court granted the Government's motion for summary judgment, and no clear error or manifest injustice arising from the Court's July 9, 2024 Order or Memorandum. (Doc. 75; Doc. 76); *Max's Seafood Café*, 176 F.3d at 677. Plaintiffs request this Court review "new evidence" and "ignored evidence" that contradicts the Court's finding that USMS controlled SpDUSM Trently. (Doc. 78, at 3-4, 7-10). The primary pieces of "new" or previously unavailable evidence are two emails from Director Robert G. Jones. (Doc. 78, at 3-4). One email, sent by Director Jones on January 15, 2014 to Joseph W. Harte which states, "a parole agent serving on USMS Task Force Officer

[("TFO")] is expected to be a team player," when describing the dual duties of parole officers serving as TFOs. (Doc. 78, at 3). Another email sent on September 24, 2014 from Director Jones to SpDUSM Trently describing the proportion of his time that SpDUSM Trently should devote to his Task Force Officer ("TFO") duties suggests that SpDUSM Trently was able to work as a TFO without constraints other than that he must not work more than 40 hours per week or on Fridays, when he is required to report for duty to Director Jones. (Doc. 78, at 4). Plaintiffs do not explain why these emails were unavailable or inadmissible during the motion for summary judgment. (Doc. 78). Regardless, these "new" pieces of evidence do not contradict the Court's previous finding that SpDUSM Trently was a borrowed servant, controlled by USMS. (Doc. 75, at 13-17; Doc. 76). The Court already addressed the issue of control in the Memorandum accompanying its July 9, 2024, Order.³ (Doc. 75; Doc. 76). Similarly, the "ignored" evidence that Plaintiffs attempt to rely on also relate to control and thus suffers from the same pitfall as Plaintiffs' "new" evidence. (Doc. 78, at 7-10). Specifically, Plaintiffs argue that the deposition of Edward Holst suggests that USMS did not control

---

³ In the July 9, 2024, Memorandum, the Court stated, ". . . the undisputed facts demonstrate that while the Board retained some control over SpDUSM Trently, the USMS exercised control over him as a TFO" (Doc. 75, at 13). The Court previous reasoned that "[a]lthough some factors, such as SpDUSM's ability to decline work or determine his hours weigh against finding that he was a borrowed employee, [. . .] the overriding factor—the right to control the performance of SpDUSM Trently's work weighs heavily in favor of finding that the USMS was a borrowing employer." (Doc. 75, at 15). This is because "[p]er the terms of the MOU, the USMS is in charge of the direction and coordination of the Task Force[;…] SpDUSM Trently reported to the United States Courthouse when he worked as a TFO [;] SpDUSM Trently submitted a monthly time sheet to reflect hours worked for the USMS, and DUSM Brozowski signed off on those hours[; and] SpDUSM Trently received a security clearance as well as a badge and credentials from the USMS and agreed to comply with USMS computer system protocols." (Doc. 75, at 13-14). Plaintiffs now state that "Director Jones and PBPP controlled [SpDUSM Trently's] work schedule and daily actions." (Doc. 78, at 4). As discussed *supra*, Court has previously recognized that while the Board retained some control over SpDUSM Trently, the USMS exercised control over him as a TFO such that the borrowed servant doctrine shields the Government from liability. (Doc. 75, at 13).

4

SpDUSM Trently's hours, which should have led to this Court to deny the Government's motion for summary judgment. (Doc. 78, at 7-10. The Court previously addressed this when it noted that the Board maintained some control over SpDUSM Trently's hours and schedule but held that USMS's "right to control the performance of SpDUSM Trently's work weighs heavily in favor of finding that the USMS was a borrowing employer." (Doc. 75, at 16); *see* *O'Donnell v. New England Motor Freight, Inc.*, No. 4:06-CV-1068, 2009 WL 674131, at *5 (M.D. Pa. Mar. 13, 2009), *aff'd* 373 F. App'x 182 (3d Cir. 2010); *JFC Temps, Inc. v. W.C.A.B. (Lindsay)*, 680 A.2d 862, 865 (Pa. 1996).

Despite Plaintiffs' attempt to reassert the arguments they previously made in their brief in opposition to the Government's motion for summary judgment, "motions for reconsideration are not designed to provide litigants with a 'second bite at the apple.'" (Doc. 62, at 5-10; Doc. 75, at 11-16; Doc. 78, at 3-5); *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947, at *2 (W.D. Pa. Feb. 1, 2017) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). "A motion for reconsideration is not to be used to relitigate, or 'rehash,' issues the court already decided, or to ask a district court to rethink a decision it, rightly or wrongly, already made." *Cole's Wexford Hotel*, 2017 WL 432947, at *2 (citing *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998)).

Plaintiffs contend that cases *Shamis v. Moon* and *Wenninger v. HTSS, Inc.*, account for either an intervening change in the controlling law or a legal error by this Court in not relying on either case to find that USMS did not control SpDUSM Trently. (Doc. 75, at 5-7); 81 A.3d 962 (Pa. 2013); 253 A.3d 255 (Pa. Super. Ct. 2021). First, neither case is an intervening change in law, as both cases were decided prior to this Court's ruling on the Government's motion

for summary judgment. (Doc. 75; Doc. 76); *see Shamis v. Moon*, 81 A.3d 962; *Wenninger v. HTSS, Inc.*, 253 A.3d 255. Second, both Shamis and Wenninger assert that an individual was not a borrowed servant simply because the third-party employer determined an employee's tasks from time to time. Again, this Court agrees with the Government that it found far more than USMS assigning SpDUSM Trently work "from time to time." (Doc. 80, at 9). Instead, the undersigned relied upon the MOU, the oath of office, and undisputed facts, along with evidence that USMS controlled SpDUSM Trently's performance of work when he was pursing a suspect. (Doc. 75, at 13). Plaintiffs' objection to this Court's reliance on *Eng. v. Lehigh Cnty. Auth.*, 428 A.2d 1343 (Pa. 1981) is also unavailing. The Court again agrees with the Government that this is just one case relied upon by this Court and has not been overruled. (Doc. 80, at 9). The Court already applied the relevant law in this case to determine that SpDUSM Trently was a borrowed servant because USMS controlled the performance of SpDUSM Trently's work when his injury occurred and that the Government is therefore immune to Plaintiffs' claims. (Doc. 76). Accordingly, the Court will not "rehash" the issues previously litigated in this case. *Cole's Wexford Hotel*, 2017 WL 432947, at *2.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration (Doc. 77) is **DENIED**. An appropriate Order follows.

BY THE COURT:

Dated: January 13, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**